Argued at Pendleton October 31; affirmed December 12, 1939

# BOND *v.* GRAF ET AL.
## (96 P. (2d) 1091)

In Banc.

Geo. T. *Cochran* and *Colon R. Eberhard,* both of La Grande, for appellants.

*J. A. Burleigh,* of Enterprise (Burleigh & Burleigh, of Enterprise, on the brief), for respondent.

BELT, J.  This is an action to recover damages resulting from an alleged fraudulent transaction wherein plaintiff was induced to merge his interests

in a motor freight line business with The Portland-Pendleton Motor Freight Inc., a corporation, in which the defendants were the principal stockholders and executive officers. Plaintiff had his headquarters at La Grande, Oregon, and held a permit under the Public Utilities Commission of Oregon to operate as a common carrier of freight with fixed terminals at Baker, Pendleton, and Portland. The Portland-Pendleton company had its headquarters at Portland and had terminal facilities at Pendleton. Defendant Paul W. Graf was president and general manager of the Portland company and Ben Billeter was secretary-treasurer thereof.

Plaintiff alleges that he was induced to transfer his business interests for 400 shares of stock in the Portland corporation, through certain false and fraudulent representations alleged to have been made by the defendants. More specifically, plaintiff charges that defendants falsely and fraudulently represented:

1. "* * that the Portland-Pendleton Motor Freight, Inc., was a corporation owning trucks and equipment for the carrying on of a motor freight business and the said trucks and equipment and permits were paid for except a very small balance of indebtedness of not to exceed $500.00."

2. "* * that the stock of said corporation was fully paid up."

3. "* * that said corporation had established terminal facilities in Portland, Oregon, and was doing a large and profitable business in the transporting of freight by motor truck between Portland and Pendleton, Oregon."

4. "* * that if the plaintiff would turn over to the Portland-Pendleton Motor Freight, Inc., his motor freight business and equipment and permits that they would assume the indebtedness against the same and that they would increase the capitalization of said corporation to 1,000 shares; and would issue to him, as

representing the equipment, business and permits turned to said corporation by him, shares in said corporation in proportion to the value of the equipment and permits transferred by him; and that they would subscribe for and pay for the balance of said increased stock; and that he would be elected as one of the officers and directors of said corporation and would hold the position of general manager of the territory served by said corporation East of The Dalles, Oregon, and that the corporation so reorganized would have assets of a value in excess of $10,000.00 with little or no indebtedness against it and would be able to operate and serve the territory covered by the permits at a much less cost than could be done operating separately, and that the plaintiff as a stockholder in said corporation and the general manager of its Eastern Oregon business would have an income and return from his property, turned over to said corporation, far in excess of what he was able to earn as an individual operator.''

Plaintiff alleged that he relied upon the above representations and was induced thereby to transfer his business interests for shares of stock that were worthless.

The cause was submitted to a jury and a verdict returned in favor of plaintiff in the sum of $4,000. From the judgment entered on such verdict, the defendants appeal.

■ The motions of defendants for a nonsuit and a directed verdict challenge the sufficiency of the evidence. These motions are in the nature of a demurrer to the evidence. We are not concerned with the conflict of the evidence nor the weight thereof. It is simply a question as to whether there is any substantial evidence to support the judgment.

■ In considering this assignment of error it is not necessary to determine whether there is evidence tend-

ing to establish all the charges of fraud as alleged in the complaint. The cause was entitled to go to the jury if there was evidence tending to show that defendants made one or more of the alleged representations upon which fraud could be predicated; that plaintiff relied upon the same and was deceived thereby to his damage. If there was no evidence to support some particular charge of fraud as set forth in the complaint, the proper remedy of the defendants was to request the court to eliminate such charge from the consideration of the jury.

■■ Before stating the facts of the case, let it be said that the court is not unmindful of the general rule that fraud cannot be predicated upon a promise to do something in the future, but the false representation must relate to past or existing facts. This court, however, has long recognized certain limitations to the above general rule and has consistently held that fraud may be actionable if, at the time of making the promise, there was no intention of performance and the representation was made for the very purpose of perpetrating a fraud. As stated in *Sharkey v. Burlingame Co.*, 131 Or. 185, 282 P. 546:

"* * the true rule is that when one promises another to do something in the future as a consideration or inducement for the latter to part with his money or property or do an act in reliance thereon and makes the promise the medium of a deception and at the time of making the promise the promissor has no present intention to perform, the transaction is fraudulent and that the existence of the intent not to perform the promise at the time of its making makes the fraud." Citing numerous authorities in support of the text.

Also see cases in note 68 A. L. R. 636.

It might also be well at this juncture to state that fraud cannot be predicated upon a promise by defendants that plaintiff "would be elected as one of the officers and directors of said corporation and would hold the position of general manager of the territory served by said corporation east of The Dalles, Oregon," as such promise would be contrary to public policy: *Thielsen v. Blake Moffitt & Towne,* 142 Or. 59, 17 P. (2d) 560; *Keady v. United Rys. Co.,* 57 Or. 325, 330, 100 P. 658, 108 P. 197. Also see cases in notes 45 A. L. R. 795 and 12 A. L. R. 1070. Neither do we think fraud could be predicated upon a representation that the merger would result in a reduction of the cost of operation, as such a statement would be merely a matter of opinion. Plaintiff, as an experienced truck operator, undoubtedly knew as much about the cost of operation as did the defendants.

The Portland-Pendleton Motor Freight, Inc., was organized in 1932 having 100 shares of no par value stock. Defendant Graf subscribed for one-third of the stock and paid the sum of $333.33 therefor. Devine and Barton each subscribed for one-third of the stock but paid nothing for these shares. The corporation, from the time of its organization until the merger in February, 1936, never owned any trucks or equipment. The corporation had no assets except some office furniture and supplies and the right to operate. The equipment used in the operation of the company was owned by Graf who leased it to the corporation at a fixed rental per month. Plaintiff owned trucks and equipment of the value of $5,000, against which there was an indebtedness of only $1,000. At the time of the merger, the assets of the company consisted principally of the property which plaintiff transferred to it. The

indebtedness of the company greatly exceeded its assets. Plaintiff received as a result of the merger only 400 shares of worthless stock.

There is evidence that defendants represented to plaintiff that the indebtedness of the company did not exceed $500, whereas, in truth and in fact, it was in excess of $5,000. Plaintiff testified that Graf told him the trucks were in his name but were the property of the corporation. When the merger was accomplished and the capital stock increased, the stock was issued to the defendants in consideration of the cancellation of their claims of indebtedness against the company.

■ We are unable to agree with defendants that evidence of general indebtedness of the company was not admissible under the pleadings. In alleging the falsity of the representations as set forth in the complaint, the plaintiff averred that "said corporation instead of having a small indebtedness of not to exceed $500, was heavily in debt and the books of said corporation were kept in such manner that said indebtedness, or a large portion thereof, did not show on the books of the corporation."

■ We cannot say, as a matter of law, that plaintiff was not misled by the representations of the defendants as to the indebtedness of the company. It will not do for the defendants to say that plaintiff should not have relied upon what they said to him about indebtedness, but that he should have examined the books and records of the company to ascertain whether they were telling the truth. Plaintiff's explanation that he could not ascertain from the books the extent of the company's indebtedness is not unreasonable.

■ It is a fair inference from the record that the defendants set out to cheat and defraud plaintiff of his

property. Although he had the second largest amount of stock, he was not elected director, nor was he given any voice in the management of the company business. Soon after the annual meeting of stockholders and the election of officers, plaintiff was ousted as manager at La Grande. All he had to show for the valuable property transferred by him to effect the merger was a worthless stock certificate. We conclude that no error was committed in submitting this cause to the jury. As a matter of fact, the verdict, in our opinion, is in keeping with justice and is supported by the clear preponderance of the evidence.

■ It is asserted that the court erred in permitting the plaintiff to testify concerning the value of the assets of the company, for the reason that the witness had not shown sufficient qualifications. Plaintiff was asked, ''Now, Mr. Bond what was the value of the assets there, excluding these trucks that Mr. Graf claimed?'' He answered: ''Not to exceed $1,000; approximately $500 per office.'' Previously plaintiff had testified to being in the office at Portland where he saw the office equipment and fixtures of the company. He said he knew the value of such property. Clearly there was no abuse of discretion by the trial court in permitting the witness to express his opinion as to the value of the property he saw—which constituted the only asset of the company: *Laam v. Green*, 106 Or. 311, 211 P. 791; *State v. Jennings*, 131 Or. 455, 282 P. 560.

Error is assigned in the giving of the following instruction:

''I instruct you, Gentlemen of the Jury, that a half truth is sometimes the worst kind of a lie and when a person makes material representations concerning the property involved, he must speak the whole truth, and

a suppression of a part of the fact is fraud when made to induce a person to act to his damage. A half truth spoken with a design of influencing the opposite party to act where he has not an equal means of knowledge is of itself fraudulent, and in this case I instruct you that if you find from a preponderance of the evidence that the defendants made representations concerning the indebtedness of the corporation with the intention of inducing the plaintiff to exchange his property for stock therein, that it was the duty of the defendants to disclose all of the indebtedness, and not simply that represented by contracts against the trucks, and any suppression of the facts regarding the amount of other indebtedness of which the plaintiff was unaware would be fraudulent.''

We see no objection to the above instruction when considered in the light of the entire charge. We cannot agree that the instruction invades the province of the jury. Certainly it was the duty of the defendants when stating the indebtedness of the company to tell the whole truth and not conceal facts which, if known to the plaintiff would no doubt have caused him not to part with his property: *Larsen v. Lootens*, 102 Or. 579, 194 P. 699, 203 P. 621.

Defendants allege that error was committed by giving the following instruction:

''I instruct you, Gentlemen of the Jury, that a material representation concerning one's intentions or state of mind, where fraudulently made to induce another to act to his damage may be an element of actionable fraud, and in this case I instruct you that if you find from a preponderance of the testimony that the defendants made fraudulent representations to the plaintiff concerning the property and affairs of the corporation, as alleged in plaintiff's complaint, and in connection therewith and as a further inducement to the plaintiff, represented that they were the majority

stock holders of the corporation in question, and further represented to the plaintiff, that if he would exchange his property for stock in said corporation, that they would elect him as a member of the board of directors of said corporation, and an officer thereof, and give him the management of the eastern portion of the freight line operated by said corporation, and that said representation was made to induce the plaintiff to exchange his property for stock, and with no intention on the part of the defendants to carry said representations into effect; and you further find that the plaintiff, relying upon the representations of the defendants, did exchange his property for stock in the corporation, and the defendants then refused to elect the plaintiff as a member of the board of directors, and as an officer, and to give him the management of the eastern portion of the freight line, and excluded him from all participation in the affairs of the corporation, then I instruct you that such misrepresentations constitute an element of actionable fraud, when taken in connection with the other misrepresentations affecting the value of the stock.''

The exception taken to the above instruction was:

"* * * said instruction is not within the allegations, is based upon intention or state of mind with no allegations in the pleading therefor, is not the law, does not truly state the evidence, nor take into consideration any facts of justification for discharge of plaintiff, interferes with the province of the jury, assumes facts not plead.''

We agree that the instruction is not free from error. However, the ground of the exception is not well taken. Nothing was said about the promise to elect plaintiff being void as against public policy. In some particulars the instruction was decidedly against the interests of the plaintiff. Plaintiff, in order to prevail, was not required to show that all the representations were made

as charged in the complaint. We think defendants have no cause to complain—in view of the fact that the exception did not cover the error to which attention has been directed.

We see no other assignment of error which merits attention.

The judgment is affirmed.

KELLY and BAILEY, JJ., not sitting.