Argued July 15, affirmed November 5, petition for rehearing
denied November 25, 1970

## SHEETS, *Respondent, v.* B & B PERSONNEL SYSTEMS OF OREGON, INC.,

*Appellant.*

475 P2d 968
476 P2d 920

Argued and submitted July 15, 1970.

*Edwin J. Peterson*, Portland, argued the cause for appellant. With him on the brief were E. Richard Bodyfelt and Tooze, Powers, Kerr, Tooze & Peterson, Portland.

*William G. Whitney*, Portland, argued the cause and filed a brief for respondent.

Before O'CONNELL, Chief Justice, and McALLISTER, DENECKE and TONGUE, Justices.

## TONGUE, J.

This is an action for damages for fraud brought by the purchaser of an "exclusive franchise" from defendant for the operation of a private employment agency. The case was tried before the court, without a jury. Defendant appeals from a judgment in favor of plaintiff for $10,518.31, representing the amount paid by plaintiff for the franchise, plus certain out-of-pocket expenses.

Plaintiff's complaint alleged that to induce him to execute the franchise agreement defendant represented that "B & B Personnel Systems had never heretofore done business in the State of Oregon"; that "the name B & B Personnel Systems of Oregon was available for employment office use"; and that "plaintiff would have no problems in establishing an office in the City of Portland for employment service"; that these representations were false and were made with knowledge of

their falsity and with the intent that plaintiff rely upon them. Plaintiff's complaint prayed for $50,000 in general damages.[1]

Defendant's principal assignment of error is that the trial court erred in denying defendant's motion for directed verdict "or its equivalent." In support of that assignment of error defendant contends that "there was no evidence that the defendant made any actionable misrepresentations" and that "proof of concealment or nondisclosure will not support a recovery in fraud based upon pleadings alleging affirmative misrepresentations." In addition, defendant contends that plaintiff offered no evidence of the value of the franchise, as necessary to support an award of damages in an action for fraud. Defendant concedes, however, that under the facts of this case plaintiff might have been entitled to rescission of the franchise contract.

Indeed, the effect of the relief awarded by the trial court was to require defendant to repay the $10,000 payment made by plaintiff, plus $518.31 for out-of-pocket expenses, as in a suit for rescission. In any event, and regardless of whether rescission might have been a more appropriate remedy, plaintiff chose to file this proceeding as an action at law for damages for fraud. Accordingly, we shall review the evidence in order that its sufficiency for the purposes of such an action may be determined.

Defendant was incorporated as an Oregon corporation in 1966. Defendant's president, R. W. Mitchell, of

---

[1] Plaintiff's complaint also prayed for $50,000 in punitive damages, but that allegation was stricken by the trial court. Defendant filed a general denial, with a counterclaim which originally prayed for $150,000 in general damages, $150,000 in punitive damages and $5,000 in attorney's fees. The trial court denied the counterclaim, which is not in issue on this appeal.

Boulder, Colorado, described himself as "an employment agency temporary help chain owner-operator." He developed a chain of about 25 employment agencies. On October 24, 1966, defendant entered into a franchise agreement with H. W. White to operate a B & B employment agency in Portland under the name B & B Personnel Systems. In accordance with requirements of Oregon Law, Mr. White applied for and received a license from the Oregon Bureau of Labor to operate a private employment agency under that name. That license was issued on June 27, 1967, for a period expiring December 31, 1967.

On July 21, 1967, Mr. White, who had encountered "difficulties" in the operation of his employment agency in Portland, informed defendant that he intended to close his "office." Defendant then, by letter dated July 24, 1967, notified White that his franchise would be terminated in 15 days unless he satisfied certain conditions, including "payment of royalties up to date." Mr. White nevertheless closed his office on July 31, 1967, but did not inform defendant that he was nevertheless retaining his license from the Oregon Bureau of Labor, which had not yet expired. Defendant, by letter dated August 18, 1967, then cancelled White's franchise agreement and informed him that it intended to "continue operating B & B Personnel Systems in the Portland area" and that under the terms of the franchise agreement White was required not to compete "within three years and within 100 miles of any of our offices." In response, by letter dated September 22, 1967, the attorney for Mr. White (who later also represented plaintiff) demanded repayment of his franchise fee of $10,000, under threat of "legal proceedings."

Meanwhile, defendant ran an advertisement in a Portland newspaper, which was read and answered by plaintiff by writing to the B & B Personnel Systems home office in Minneapolis, Minnesota. In response, plaintiff received a letter, dated August 7, 1967, stating, among other things, that it was looking for a "a mature, aggressive, hard-driving man, who, after training, would like to own his own business"; that "remuneration" under its program "will run up to $50,000 annually"; that "we have been in business for 20 years" and "know what we are doing"; that *we have never closed an office in all of our 20 years,*" and enclosing a "Confidential Qualification Profile" to fill out and return.

Plaintiff was also called by telephone suggesting that he "investigate this opportunity" by making a visit to the home office in Minneapolis, which he then did, on October 4, 1967. During that two-day visit plaintiff was given literature describing the B & B program and was also taken on a visit to its head office and two of its agency offices.

In the course of discussions with B & B representatives, including Mr. Mitchell, plaintiff inquired why B & B was "not on the West Coast." In response to that inquiry plaintiff was told that B & B did not have an office in Portland, but was expanding to the West Coast and had an office in Seattle. Plaintiff was not told, however, that B & B previously had an office in Portland, much less that such office had previously been closed as the result of a controversy with Mr. White.

In response to a question by the trial judge why he did not tell plaintiff "about the White operation" in Portland, Mr. Mitchell replied that he "didn't want to

demoralize him" and "didn't think it was of any importance," and that "if he had asked it we would have certainly 'volunteered it'," but that "obviously we are not going to tell of the unprofitable aspects" unless he "asked."

Plaintiff also testified that the reason he did not specifically inquire about previous B & B offices in Portland was that at the time it had no office in Portland (as he had been told) and that in the previous letter it had been stated by B & B that none of its offices had ever been closed, with the result that he concluded that B & B never had an office in Portland.

In that connection, it is to be noted that shortly after plaintiff's trip to Minneapolis (but after the franchise agreement was signed), one of defendant's representatives, Mr. Donald Williams, requested that the agent of the owner of the building in Portland in which space was to be leased by plaintiff for his new employment agency office not "let Mr. Sheets know that B & B had been in this town before" or that Mr. White's franchise had been revoked. This was also explained on the ground that to do so "would only upset Mr. Sheets at the start of his business."[2]

Meanwhile, plaintiff signed an "exclusive franchise" agreement in the form proposed by defendant and delivered to defendant a cashier's check for $1,000, to be used "to investigate me" and to make a "business survey" of the "Portland market."

Shortly afterwards, on October 16, 1967, plaintiff was notified that the B & B Board of Directors had

---

[2] It is also to be noted that Mr. Williams attempted to make a distinction between the previous closing of B & B offices operated by franchise holders, as admitted by him, and the closing of an office owned and operated directly by B & B, which he denied.

"approved your contract." He was also told that the "market survey was satisfactory." He then made a second trip to Minneapolis for a three day training course. During that visit plaintiff was again told that B & B "had never been here." Plaintiff then made further payments for the franchise, totaling $10,000.

On or about the same date defendant's president, Mr. Mitchell, together with Mr. Williams, made a trip to Portland to meet with a representative of the Oregon Bureau of Labor to be sure that it would be "receptive to Mr. Sheet's reactivating the office in this area." At that meeting the problems encountered by the Oregon Bureau of Labor in dealing with Mr. White were discussed and Mr. Mitchell testified that he left with the "very definite understanding that B & B was welcome; that there would be no difficulties in getting licenses."

It was admitted by Mr. Mitchell that it was defendant's responsibility to "look up the laws" relating to licensing so as to assist franchise holders in procuring proper licenses; that in some other states there had been "problems" in using the B & B name; that Mr. White still had his unexpired license "when Mr. White's franchise was sold to Mr. Sheets," and that White could renew that license for $10. Nevertheless, Mr. Mitchell testified that he assumed that because Mr. White had closed his office, because Mr. White's franchise had been cancelled, and because "we had a corporation" in Oregon, it was "logical" that the trade name would be available to (Sheets) as a license franchisee."

For some reason, however, Mitchell and Williams did not meet with plaintiff on that trip, but came into Portland and left without seeing plaintiff, who testi-

fied that he waited that day for a phone call so that he could meet them and did not learn until later that they had been in Portland most of that day. It was apparently on this same trip that Mr. Williams arranged for office space and told the building owner's agent not to tell plaintiff that "B & B had been in this town before."

On November 14, 1967, Mr. Williams made a second trip to Portland to help plaintiff set up the employment agency. At that time he went with plaintiff to see the same representative of the Oregon Bureau of Labor to make arrangements for plaintiff to take his test for an employment agency license. At that time plaintiff also filed an application for a license to operate the employment agency under the name "B & B Personnel of Portland." Apparently there was no discussion at that time of the question whether that name was available to plaintiff by reason of the fact that Mr. White then held an unexpired license to operate an employment agency under the name " B & B Personnel Systems." By law, a period of 30 days is provided for investigation of such application by the Oregon Bureau of Labor.

Meanwhile, also on November 14, 1967, plaintiff encountered difficulty in opening a bank account in that name and was told that the name was "already in use." He was told by Mr. Williams that he "supposed that the business name was reserved by the home corporation." Ten days later, on November 24, 1967, after passing his examination for a license to operate the employment agency plaintiff again visited the same representative of the Oregon Bureau of Labor and was told, for the first time, of the previous operation by Mr.

White and that the license was not available because it was held by Mr. White.

Plaintiff then verified that fact from Mr. White. This disturbed plaintiff because one of the inducements had been that he would be "part of a national team" of B & B employment agencies, with referrals from other agencies "all over the country." In addition, plaintiff was "beginning to have second thoughts about the help and assistance that (he) was supposed to have gotten from B & B and the 'complete training' that (he) found (he) didn't have," as promised by B & B and "felt that (he) couldn't depend upon B & B." He also thought that he "couldn't open an office without a license." Defendant contends, however, that the fact that the B & B name was not available was not known until that date and that there had been "no intimation" that it was not available until then.

In any event, on November 24, 1967, plaintiff called the B & B head office in Minneapolis to say that he was closing the employment agency office in Portland, which he then did.

Defendant contends that under these facts "there was no evidence that defendant made any actionable misrepresentations," at least by the "clear and convincing evidence" required in an action at law for fraud, and that, at the most, defendant "failed to disclose that it had an office in Portland."

We hold, however, that the evidence offered by plaintiff was sufficient to support the finding by the trial court that defendant made an "actionable misrepresentation" that B & B Personnel Systems had never done business in the State of Oregon.

It was important to plaintiff to know whether B & B had previously done business in Oregon, since the fail-

ure or success of any such previous venture in Oregon would have been an important consideration in deciding whether or not to pay $15,000 for a franchise to operate such an employment agency. This was apparently recognized by defendant, as shown by its subsequent request that the building owner's agent not tell plaintiff that White previously had an office in that building. Indeed, defendant does not deny that a representation that B & B had not previously done business in Oregon would have been material and "actionable," but contends instead that it never made such a representation.

It is true that defendant did not represent to plaintiff, in so many words, "that B & B Personnel Systems had never heretofore done business in the State of Oregon," as alleged in plaintiff's complaint. Plaintiff testified, however, that defendants told plaintiff that "there was not an office in Portland." Defendant also represented to plaintiff in its first letter to him that in its 20 years of successful operation "we have never closed an office." In addition, when plaintiff inquired why B & B was "not on the West Coast," he was told that it was "expanding to the West Coast area and had an office in Seattle."

Based upon this evidence, the trial court could properly find that defendant gave the clear impression to plaintiff that there never had been a B & B employment office in Portland, despite the fact that defendant had just cancelled the franchise for operation of the B & B employment office in Portland by Mr. White.

According to Prosser on Torts (3d ed) 709, § 101:

"* * * misrepresentation may be found in statements which are literally true, but which create a false impression in the mind of the hearer * * *."

And, at p 710:

> "Any words or acts which create a false impression covering up the truth * * * are classed as misrepresentation * * *."

Similarly, in *Dahl et al v. Crain et ux,* 193 Or 207, 224, 237 P2d 939 (1951), this court approved the following statement of the rule:

> "Fraud may be predicated upon an equivocal, evasive or misleading answer calculated to convey a false impression even though it may be literally true as far as it goes."

■ Such a rule is based upon the recognition that "a half truth is sometimes the worst kind of a lie" (*Bond v. Graf,* 163 Or 264, 272, 96 P2d 1091), and that while one party to a sales transaction is not required to answer inquiries by the other, if he does so he must answer truthfully by making a "full and fair disclosure." (*Dahl et al v. Crain et ux, supra,* at p 224.)

■■ Applying these well-established rules to the facts of this case we hold that there was sufficient evidence to support the finding of the trial court that defendant made an affirmative misrepresentation to plaintiff that B & B Personnel Systems had never before done business in Oregon, which was the ultimate fact alleged in plaintiff's complaint. We also hold that such evidence was sufficiently "clear and convincing" to satisfy the definition of that term as stated in *Cook v. Michael,* 214 Or 513, 527, 330 P2d 1026 (1958), in which this court held that "proof by 'clear and convincing evidence' means that the truth of the facts asserted is highly probable."

Having reached this conclusion, it is unnecessary to consider defendant's further contention that the allegations of an affirmative representation cannot be

supported by proof of concealment or nondisclosure of defendant's contention that plaintiff did not offer sufficient evidence to establish the further allegations that defendant represented "that the name B & B Personnel Systems was available for employment office use" and "that plaintiff would have no problems in establishing an office in the City of Portland for employment services."

Defendant's remaining contention is that plaintiff failed to offer any competent evidence on the issue of damages and that "damages cannot be recovered in a fraud action without alleging and proving that the item purchased was worth less than the price paid or the value as represented."

As previously stated, defendant moved at the close of the testimony for a directed verdict "or its equivalent," in a case tried before the court, without a jury. That motion was based upon the ground that "there is no substantial evidence proving or tending to prove that the defendant was guilty of any of the fraudulent acts which are pleaded in the plaintiff's amended complaint or at all." Thus, in support of that motion, no contention was made that plaintiff's evidence on the issue of damages was insufficient.

When the trial judge reserved ruling on the motion for a directed verdict defendant then made three alternative motions, one of which was a motion "that the plaintiff's damages alleged in Paragraph Roman numeral VII be limited to the sum of $10,518.31," which represented the $10,000 paid by plaintiff in partial payment for the franchise, plus $518.31 in "out-of-pocket" expenses incurred by plaintiff.

4. Thus, defendant not only failed before the trial court to contend that plaintiff's evidence on the issue

of damages was insufficient to support any recovery, but, on the contrary, suggested that a judgment in the sum of $10,518.31 would be proper if the court found that there was sufficient evidence of fraud.

Under these circumstances, and having thus, in effect, proposed the formula for the computation of damages as adopted by the trial court, defendant cannot now be heard to complain that the amount of damages awarded by the trial court was improper. Cf. *Warren et ux v. Parsons et ux*, 224 Or 605, 609, 356 P2d 953 (1960).

Affirmed.

## ON PETITION FOR REHEARING

Edwin J. Peterson, Portland, and Tooze, Powers, Kerr, Tooze & Peterson, Portland, for appellant.

No appearance contra.

TONGUE, J.

■ Defendant has petitioned for a rehearing upon the ground that our opinion failed to consider defendant's second assignment of error. By that assignment it was contended that the trial court erred in failing to withdraw from its consideration the allegation that defendant represented that plaintiff would have "no problems" in establishing an employment office in Portland, as alleged in paragraph IV(2) of plaintiff's complaint.

Because the judgment for plaintiff was amply supported by evidence offered to prove the misrepresentations alleged in paragraph IV(1) of plaintiff's complaint, we did not consider it necessary to discuss in our opinion the further question whether the evidence was also sufficient to support the misrepresentation alleged in paragraph IV(2). In our judgment, however, and after considering the evidence offered by plaintiff in support of that allegation, we cannot properly say that there was no substantial evidence to support the allegation. It follows that there was no error in failing to withdraw it from consideration, particularly since this case was tried before an experienced trial judge, without a jury.

Petition for rehearing denied.