Submitted on briefs October 4, 1930; modified June 2;
rehearing denied September 22, 1931

# WARREN CONSTRUCTION CO *v.* GRANT ET AL.

(299 P. 686, 2 P. (2d) 1118)

*John W. Kaste* and *Dey, Hampson & Nelson,* all of Portland, for appellants.

*Wood, Montague & Matthiessen* and *Jay Bowerman,* all of Portland, for respondent.

CAMPBELL, J. On July 12, 1920, there was filed in the circuit court of Oregon for Multnomah county, a complaint by the defendants herein against the Highway Commission praying for an injunction against the building of a certain portion of the west side Pacific highway in Polk county. Later the Warren Construction Company, plaintiff herein, was also made a party defendant in that suit. On July 26, 1920, a restraining order was made by the presiding judge enjoining the therein defendants from proceeding with the construction work on that part of the highway described in the complaint, said order "to be effective upon the filing with the clerk by the plaintiffs of a bond in the sum of $10,000 to be approved by the court, conditioned that plaintiffs will pay * * * such damages not exceeding $10,000, as defendants or either of them may sustain by reason of the injunction, if the same be wrongful or without sufficient cause."

This order was served on the Warren Construction Company July 27, 1920. On August 2, 1920, all of the

plaintiffs therein, except Oscar Hayter, executed the bond required by the order. On August 7, 1920, a motion to dissolve the temporary injunction was overruled by the court. The case came on for trial on August 30, 1920, and on September 9, 1920, the court rendered its decision dismissing the case and dissolving the injunction.

On July 1, 1922, the complaint in the instant case was filed, this being an action on the injunction bond filed in the above suit. Plaintiff alleges the filing of the above suit for injunction and the giving of the bond, and that it obeyed the injunction and, as a result thereof, was damaged in the sum of $9,022.26. On stipulation the damages were itemized as follows:

| | |
|---|---|
| Labor dismantling plant | $ 403.68 |
| Plant watchman during the period August 8 to September 22, 1920 | 150.00 |
| Re-erection of plant | 320.92 |
| Loss of time of employe at plant during period of injunction | 99.48 |
| Traveling expenses of employes incurred by reason of suspension of work | 136.35 |
| Freight on equipment used elsewhere during period of injunction | 396.52 |
| Interest on state estimates deferred during injunction | 506.15 |
| Salaries, superintendent and cashier connected with work at all times | 609.16 |
| Rental of equipment remaining on work 43 days at $100 per day | 4,300.00 |
| Equipment rental for additional time required to complete work by reason of injunction, 14½ days at $100 per day | 1,450.00 |
| Total | $8,272.26 |

Through dilatory pleas, stipulations and an "Alphonse and Gaston" attitude between opposing counsel, the case was not put at issue until April, 1929.

The defendants' answer, in effect, denied the issuance of an injunction and any damages flowing therefrom. For a further and separate answer and defense they set up all the proceedings had in the injunction suit, including the separate answer and defense therein filed by the Warren Construction Company, a copy of the restraining order, a copy of the affidavit of Raymond D. Hoyt, the then manager of the Warren Construction Company, which affidavit was filed in support of a motion to dissolve the temporary injunction, and a copy of the decree made by the court in that suit. To this answer the plaintiff filed its reply which amounted to a practical denial of the new matter alleged in the defendants' answer.

Shortly thereafter, it was tried and judgment entered May 9, 1929. Both parties waived a trial by jury and submitted the case to the court. At the close of plaintiff's case in chief, defendants moved for a non-suit which was denied. Again at the close of all the testimony, defendants moved for a directed verdict which was also denied and exceptions duly saved to the ruling of the court.

The court made findings of fact in which he found in favor of the plaintiff and against the defendants, and that the defendants were damaged as follows:

1. Expenditure for labor in dismantling plant _____$ 403.68

2. Wages of plant watchman during the suspension of work _____ 150.00

3. Re-erection of plant _____ 320.92

4. Interest on moneys for the period during which payment was delayed by injunction, computed at 7 per cent, which the court finds plaintiff was obliged to pay upon said amount of moneys during that period 242.21

5. Salary of cashier _____$ 235.00

6. Loss of use of equipment (charged by plaintiff as equipment rental) during the period while the work was stopped by injunction, to-wit, from August 3d, date of filing bond, to September 9th, date of Judge McCourt's decision, 37 days, and for the reassembling of the plant and the working crew, and also for delay in completing the work due to rainy weather computed by the court to be 10 days, all of which times are found by the court to be a reasonable allowance at $50 per day _____ 2,350.00

Total _____$3,701.81

These findings are in the nature of a special verdict on each item. That is, he made a finding on each item separately and upon these findings based a general verdict. Those items upon which there was competent evidence to support we may not disturb. On those items that are not supported by competent evidence, or in excess of the amount shown by competent evidence, we may review.

The defendant, Oscar Hayter, not having signed the bond, no judgment could be recovered against him, and we need not further refer to that fact when speaking of the defendants.

The case wherein the defendants herein were plaintiffs and secured the injunction order, for convenience we will hereafter refer to as the injunction suit.

The first contention of defendants is that the restraining order issued in the injunction suit was void. The facts upon which they base this contention are as follows: The motion for the temporary injunction was based on the complaint and affidavits. A hearing, in which both parties participated, was had before the

order was issued. The order so far as it is material to the determination of this case, reads as follows:

"* * * and the defendant, Highway Commission, and defendant, Warren Construction Company, are hereby enjoined from continuing in the work of constructing or improving that portion of said road described in plaintiffs' amended complaint from Rickreall to Monmouth; save and except that said defendants may finish such portion of said highway as is now rocked and dressed ready for the top dressing, or top surface, but not to exceed 1,000 feet north of the finished pavement as now laid, and said Highway Commission is enjoined from expending any of the funds of the Highway Commission in furtherance of said work.

"This order to become effective upon plaintiffs' filing with the clerk of this court a bond in the sum of $10,000 to be approved by the court conditioned that plaintiffs will pay all costs and disbursements that may be decreed to defendants and such damages not exceeding $10,000, as defendants, or either of them, may sustain by reason of the injunction, if the same be wrongful or without sufficient cause."

The usual practice of the circuit courts of the state in issuing temporary injunctions after a hearing of both parties, is: when in the judgment of the court such an order should be made, he announces from the bench that fact and fixes the amount of the bond, and requests the attorney representing the party asking for the injunction to prepare the order, and also states that the order will be entered on the filing and approval of the bond. Until these conditions are complied with, the order is ineffective. The restraining order in question, it will be observed, made use of the words, "this order to become effective upon plaintiffs filing * * * a bond". The order permitted the therein defendants to proceed with considerable construction work. It does not appear that they were in anywise

hampered in their operation until long after the bond was filed. The bond being filed on August 3, 1930, the defendants did not suspend operations until August 9; that is, they had enough work on the job that the order did not interfere with, to keep their plant running until that date when a portion of their plant was shut down.

■■ The order in itself fixed the time when it would be effective. It says, in effect, when a bond is filed and approved, stop work. Until this is done, you may proceed. It was irregular but not void. It may be conceded that a more apt form of order could have been used, yet the common sense meaning that the man of average intelligence would put upon the order is that it does not enjoin anything until the bond is filed. That is it does not, nor was it intended to, actually become an injunction until the conditions precedent had been complied with. The defendants, knowing the order that was made and that a bond was filed for their protection, in good faith obeyed the injunction and should not now be punished for complying with the mandate of the court. Neither should the party, at whose instance the order was obtained and who reaped the benefit and advantage thereof, be heard to complain. The plaintiffs in the injunction suit having accomplished their purpose and obtained an advantage by the order, even if irregularly issued, should now be estopped from denying the efficacy thereof or liability for damages directly caused by their own acts.

The instant case does not come within the rule announced in *Carter v. Mulrein*, 82 Cal. 167 (22 P. 1086, 16 Am. St. Rep. 99), or in *Alaska Improvement Co. v. Hirsch*, 119 Cal. 249 (47 P. 124, 51 P. 340), where a writ of injunction, effective immediately, was issued before filing a bond.

■ Had the defendants in the injunction suit refused to recognize and comply with the order, it may be doubtful if they could have been punished for contempt: *State ex rel. v. La Follett,* 100 Or. 1 (196 P. 412). Contempt proceedings are quasi-criminal. In such proceedings the defendant is contesting an order imposed upon him without his consent and against his will. In the instant case, the defendants are contesting an order issued at their own special insistence, instance, and request. It will be noted that in *State ex rel. v. La Follett,* no bond was required or filed.

■ The next point contended for by defendants is: that because the order was signed before the bond was filed, there was no consideration for the bond. The real consideration for the bond was the stoppage of the work, that they received.

■ The defendants further contend that the matters litigated in the instant case have been already litigated in the injunction suit. This contention was based on the prayer of defendants (plaintiffs herein) in the injunction suit in their answer, asking "that it have an accounting of the damages which it has suffered by the temporary injunction herein claimed." There is nothing in said answer upon which that part of said prayer could have been granted. It is true that said answer alleges that defendant therein would be greatly damaged, but nowhere does it specify any amount. We do not understand that one can come into court and say that he is greatly damaged and ask the court for a judgment without any allegations of probative facts. In any event, the record does not disclose that the court passed upon or determined any of the matters alleged in the instant case regarding damages.

■ The defendants also contend that the defendants in the injunction suit were engaged in doing an unlawful act at the time they were enjoined. That question is foreclosed by the final decree of the court dissolving the injunction and permitting the defendants therein to proceed.

There was no error in the court's overruling the motions for a non-suit and for a directed verdict.

■ We shall not review the testimony at length. Suffice it to say there was some competent testimony to support the court's finding on item 1, expenditure for labor in dismantling plant; on item 2, wages of plant watchman during suspension of the work; item 3, re-erection of plant; item 5, salary of cashier. As to item 4, interest on moneys for the period during which payment was delayed by injunction, the evidence clearly shows that there was an error in estimating the time. The time of delay should have been computed as 35 days instead of 47 days. On item 6, the time the plant was shut down, the undisputed evidence is that no part of the plant ceased operations until August 9, 1920, and that the injunction was dissolved September 9, 1920. Between these dates would be 25 working days. Plaintiffs' exhibit "D" being four separate payrolls on the work enjoined being made in the regular course of business, and sufficiently identified, was clearly admissible under the shop book rule: *Rattke v. Taylor*, 105 Or. 559 (210 P. 863, 27 A. L. R. 1423). The pay rolls were for the half-month periods ending August 15, August 31, September 15 and September 30. They show practically a full crew up to and including August 12, so that it may be assumed that was the date the company closed down the entire plant. These pay rolls also show conclusively that the defendant (plain-

tiff herein) did not operate its plant on Sunday and it is but reasonable to presume that it would not operate on a public holiday (Labor day). This makes 25 working days from August 9, 1920, to September 9, 1920. The pay roll further shows almost a full crew on September 15, 1920, and no reasonable excuse is shown for not having had an entire full crew on that date. However, there is some evidence supporting the finding that plaintiff was delayed ten days by reason of getting the crew together and by interference with the work by rain. The trial court's finding on that part of item 6, respecting the length of time necessary for that purpose, we adopt. Thus making a total of 35 days delay by reason of the injunction.

There were many exceptions taken to the admission of certain testimony as being incompetent, but a large part of the evidence objected to related to items that the court entirely disallowed, so that even if the evidence was incompetent the appellants were not injured. We have not overlooked the contention made by defendants that no allowance should have been made for the rental value of the plant during the time it was kept idle, by reason of the injunction, because plaintiff had many other plants of the same kind, some of which were idle at the same time. The same argument might be used by a man, who obtained money wrongfully from a bank and retained it for some time, that he should not be required to pay interest because the bank had other money that was not loaned out. It is conceded that no interest should be allowed until the amount was fixed by judgment.

The other errors complained of we do not deem material to the issues involved in this case.

A careful and critical examination of the authorities cited by counsel will show that they are not in conflict with the principles herein announced.

The itemized amounts to be allowed will therefore be corrected as follows:

1. Expenditure for labor in dismantling plant _____$ 403.68
2. Wages of plant watchman during the suspension of work _____ 150.00
3. Re-erection of plant _____ 320.92
4. Interest on moneys for the period during which payment was delayed by injunction, computed at 7 per cent, which the court finds plaintiff was obliged to pay upon said amount of moneys during that period 180.40
5. Salary of cashier _____ 235.00
6. Loss of use of equipment (charged by plaintiff as equipment rental) during the period while the work was stopped by injunction, and for the reassembling of the plant and the working crew, and also for delay in completing the work due to rainy weather, total 35 days, all of which times are found by the court to be a reasonable allowance, at $50 per day _____ 1,750.00

Total _____$3,040.00

It therefore follows that the judgment will be affirmed as modified and the case remanded with instruction to enter a judgment for the sum of $3,040.00, with interest thereon at the rate of 6 per cent per annum from date of entry, and that the defendant, Oscar Hayter, be dismissed.

A substantial reduction having been made in the judgment, it is further ordered that neither party recover costs in this court.

BEAN, C. J., BROWN and RAND, JJ., concur.

BELT, J., dissenting. In my opinion the injunction order made on the 26th day of July, 1920, and served on the following day was null and void for the reason that no undertaking was required before allowing the same. The bond or undertaking was not executed and filed with the clerk until August 3, 1920. The injunction order was therefore in direct violation of section 6-402, Oregon Code 1930, which provides:

"An injunction may be allowed by the court, or judge thereof, at any time after the commencement of the suit and before decree. Before allowing the same, the court or judge shall require of the plaintiff an undertaking, with one or more sureties, to the effect that he will pay all costs and disbursements that may be decreed to the defendant, and such damages, not exceeding an amount therein specified, as he may sustain by reason of the injunction if the same be wrongful or without sufficient cause."

The execution of the bond and its filing with the clerk are conditions precedent to the issuance of the injunction order. Compliance with the plain, mandatory, and imperative provisions of the above section was essential to the jurisdiction of the court. The order in question was not "irregular," but was absolutely void. The rule is thus stated in 32 C. J. 318:

"According to the weight of authority, where the statute requires that the party applying for an injunction shall, as a condition precedent to its issuance, execute a bond or undertaking, with sufficient sureties, an injunction issued without such bond or undertaking is inoperative and void * * *." Citing numerous authorities in support of the text, among which is *State v. La Follett,* 100 Or. 1 (196 P. 412).

In construing the statute relative to the allowance of injunctions, Mr. Justice HARRIS, speaking for the court in *State v. La Follett,* supra, said:

"The language of the statue is imperative, for the wording is 'Before allowing the same, the court or judge shall require of the plaintiff an undertaking.' This statute in effect declares that judges and courts are without jurisdiction and therefore without power to allow temporary injunctions *unless an undertaking is first filed* * * *. The giving of an undertaking is indispensable. The court could not dispense with that which the legislature has declared to be indispensable. Although the court acquired jurisdiction over the suit, it did not acquire jurisdiction to allow a preliminary injunction in the ancillary proceeding attempted to be prosecuted by the plaintiff."

In that case we also find the following significant language:

"* * * if the order was made without jurisdiction it was absolutely void."

It is true that in the La Follett case the matter before the court was a contempt proceeding, but if an injunction order was void therein for the reason that no undertaking was filed prior to its issuance it would seem, on principle, that such an order would be void here for the same reason.

Having reached the conclusion that the order in question was a nullity, the next logical inquiry is: What consideration was there for the bond? It is said by Mr. Justice CAMPBELL that the consideration was "for the stoppage of the work that they received," but can it be said that the plaintiff stopped work by virtue of a void order? If the company stopped work it was its own voluntary act and it cannot be said to have been so compelled by reason of anything which the court did when acting beyond its jurisdiction and in plain violation of the statute. The injunction, on its

face, informed the plaintiff that it was a mere nullity in that it called for the subsequent execution of an undertaking. Estoppel in pais is, therefore, not involved as the plaintiff cannot, as a matter of law, have been misled by an order having no force or effect.

Defendants have a right to rely upon the express terms of the bond and their liability will not be extended beyond such terms. The bond recites:

"Whereas, the above named plaintiffs have commenced a suit in the Circuit Court of the State of Oregon for Multnomah county, against the above named defendants, and have heretofore obtained an injunction in said suit against said defendants, enjoining and restraining them from the commission of certain acts, as in the order for said injunction is more particularly set forth and described.

"Now, therefore, we U. S. Grant (et al.), as principals and United States Fidelity & Guaranty Co., as surety, in consideration of the premises and of the issuing of said injunction, jointly and severally undertake and promise that the said plaintiffs shall pay all costs and disbursements that may be decreed to the defendants, and such damages not exceeding a sum of $10,000, as defendants, or either of them, may sustain by reason of the said injunction, if the same be wrongful or without sufficient cause."

If the undertaking was given in consideration of an injunction which had been issued and served eight days previously, then, under the authority of *State v. La Follett,* supra, and cases cited therein, it was without any consideration whatsoever and was, therefore, void. If it be argued that the undertaking was given in consideration of an injunction to be issued in the future, then it is answered that no such injunction was ever issued.

*Carter v. Mulrein,* 82 Cal. 167 (22 P. 1086, 16 Am. St. Rep. 99), which was an action on an injunction bond, is squarely in point and supports the theory of appellants. The court there said:

"It fully appears from the complaint, and is admitted on the argument, that * * * an order was signed by the judge of the court on March 3, 1881, and filed March 4, 1881, that an injunction issue 'on the filing by plaintiff of a joint and several undertaking to the defendants in the sum of $7,500, with two sufficient sureties;' that on said March 4th, a writ of injunction was issued and served; that said writ was the only writ of injunction ever issued in said action; that all the alleged damage to plaintiff was caused by his obedience to that writ; and that the bond sued on in the case at bar was not executed until March 12, 1881, eight days after the issuance and service of said writ. The bond recites that 'Whereas, the above entitled court has made an order that upon the filing by the above-named plaintiff of an undertaking in the sum of $7,500, with two sufficient sureties, a writ of injunction issue: * * * now, therefore, in consideration of the premises, and that said writ of injunction may issue, we' undertake, etc. No writ issued after the filing of the undertaking. It is well settled that sureties on statutory bonds, having no personal interest in the litigation, can stand upon the express terms of their undertaking, and cannot have their liability forced beyond those terms. 'A surety has a right to stand on the precise terms of his contract. * * * He can be held to no other or different contract': *People v. Buster,* 11 Cal. 220. 'His liability arises under his contract merely and is limited by its terms and conditions': *McDonald v. Fett,* 49 Cal. 355. 'If there is any principle of law well settled, it is that the liability of sureties is not to be extended beyond the terms of their contract. To the extent, and in the manner, and under the circumstances pointed out in their obligation, they are bound, and no further. They are entitled to stand on its precise terms': *Pierce v. Whiting,* 63

Cal. 543. In the bond sued on in this case there is no undertaking by the sureties to protect against the injunction which had been issued on March 4. It referred entirely to a writ of injunction which might issue, by virtue of the undertaking, upon or after its filing; and no such writ ever issued. No doubt the defendant in that case (plaintiff in this) relied upon that undertaking; but we cannot wrest settled principles of law from their foundations in order to condone the carelessness of parties who fail to look after their rights at the proper time. If the defendants in the injunction suit had paid the slightest attention to their interest when the bond sued on was filed, they would have discovered that it afforded no protection against the writ which had for several days been issued and served, and that said writ was invalid, unless, indeed, we must presume that some other bond had been filed before the writ issued.''

Also to the same effect see *Alaska Improvement Co. v. Hirsch,* 119 Cal. 249 (47 P. 124, 51 P. 340). These two cases are conceded by counsel for plaintiff to support the theory of appellants.

In my opinion the defendants, for the reasons stated, were entitled to a directed verdict, since no liability could be predicated upon a bond given without consideration: 32 C. J. 455.

ROSSMAN and KELLY, JJ., concur in this dissenting opinion.

Petition for rehearing denied September 22, 1931

ON PETITION FOR REHEARING

(2 P. (2d) 1118)

CAMPBELL, J. In this cause counsel for appellants has presented a very forceful but courteous petition for a rehearing. The only new contention that he makes in his petition for a rehearing is that this cause was submitted to the court without argument, prior to the time the writer of the majority opinion became a member thereof.

 The Supreme Court of the State of Oregon is a permanent institution. It is a creature of the Constitution of the state. The personnel of the court is temporary. The tenure of office of the individuals who compose the court is uncertain. The length of service of its members depends on many factors, not the least of which is the dissatisfaction of losing litigants. When a cause is submitted without argument, it is submitted to the court and not to the justices as individuals. However, if the appellants had any desire to withdraw their submission without argument, and so requested the court before the decision was rendered, there is no doubt but that their wishes would have been respected, but, having waited until they found the decision against them, it is too late now to complain.

All the other matters contended for by counsel in his petition for a rehearing were given careful consideration before the original opinion was written, and we see no reason for arriving at a different conclusion. Petition for a rehearing is denied.