Argued January 8, reversed and remanded January 29, 1976

## STATE OF OREGON, *Petitioner,*
### *v.*
## GLENN FREDERICK KOENNECKE, *Respondent.*

545 P2d 127

 

*W. Michael Gillette,* Solicitor General, Salem, argued the cause for petitioner. With him on the brief were Lee Johnson, Attorney General, and Timothy Wood, Assistant Attorney General, Salem.

*Dwight L. Schwab,* Portland, argued the cause for respondent. With him on the brief were James C. Niedermeyer and Hutchison, Schwab, Burdick & Hilton, Portland.

TONGUE, J.

**TONGUE, J.**

Defendant was indicted for attempted murder of a police officer by "firing a high-powered rifle" at him. Defendant filed a motion to produce a large number of items, including the service revolvers of two other police officers who were involved in the exchange of shots that led to the charge. The court allowed that motion and subsequently ordered that these revolvers be delivered to defendant's attorney for a period of 30 days. The two police officers, to whom the revolvers belonged, refused to produce them under the terms of that order. The court then entered an order that the testimony of the two officers "is inadmissible in any trial of the above entitled cause." The state appealed from that order.

The Court of Appeals, in a divided opinion, held (1) that "defendant had a right under appropriate circumstances to have his own qualified expert make such examination of the * * * guns * * * as was reasonably necessary to ascertain facts material to the charge"; (2) that the state was not excused from producing the guns by the refusal of the officers to cooperate "except on their own terms"; but (3) that it was error for the trial court not to have exercised its power to "supervise" the discovery by the entry of an order providing for the time, place or circumstances of the inspection of the guns when the parties could not agree upon these matters.[1] 22 Or App 89, 537 P2d 1160 (1975).

We granted the state's petition for review of that decision because of the importance of two questions: (1) Whether the order precluding the testimony of the two officers was appealable by the state as an order "suppressing evidence" made prior to trial pursuant to

[1] Chief Judge Schwab, in a dissenting opinion, expressed the view that defendant did not need the guns of the officers to prepare his defense and that they were not subject to discovery on either constitutional grounds or under statutory provisions.

ORS 138.060(3); and (2) whether the revolvers were properly subject to discovery.

1. *The order suppressing the testimony of the police officers was an order "suppressing evidence" under ORS 138.060(3).*

ORS 138.020 limits appeals by the state in criminal cases to those allowed by ORS 138.060, which provides that:

> "The state may take an appeal from the circuit court to the Court of Appeals from:
>
> "(1) An order made prior to trial dismissing or setting aside the accusatory instrument;
>
> "(2) An order arresting the judgment;
>
> "(3) *An order made prior to trial supressing evidence;* or
>
> "(4) An order made prior to trial for the return or restoration of things seized." (Emphasis added)

It is suggested that subsection (3) has application only to orders entered either in response to a "motion to suppress," as provided by ORS 133.673, or after an "omnibus hearing" held, in accordance with ORS 135.037. Those contentions were considered by the Court of Appeals in *State v. Hoare,* 20 Or App 439, 532 P2d 240 (1975), and rejected by it, holding that:

> "Defendant's narrow interpretation of ORS 138.030(3)—founded on a distinction between 'pretrial motions' and mere 'preliminary objections'—is unwarranted. The state's right to appeal from '[a]n order made prior to trial suppressing evidence' is based on a statutory provision enacted some four years before ORS 133.673 and 135.037 were incorporated into the criminal code. * * *
>
> "* * * [F]or purposes of determining whether the state may appeal an order 'suppressing' * * * evidence, the significant factor is whether the order has been made as the result of *some pretrial* action by the parties. When a defendant raises an objection to evidence in advance of trial, he takes the risk that the state may have an opportunity to obtain review of an adverse decision it would

otherwise be deprived of if the objection were made during the course of the proceeding. * * *" (Emphasis theirs)

We agree with that statement. We also believe that the application of this rule is not limited to cases in which an order to suppress evidence has been the result of an objection by the defendant to evidence in advance of trial.

As held by the Court of Appeals in *State v. Robinson,* 3 Or App 200, 210, 473 P2d 152 (1970):

"* * * The language of the statute in regard to orders 'suppressing evidence' is clear and unambiguous. * * *"

For these reasons, we hold that the order suppressing the testimony of the two police officers in this case was an order "suppressing evidence" under ORS 138.060(3).

It is contended by the defendant in this case, however, that any error in the entry of this order was at most "invited error" because it was the state's attorney who suggested to the trial court, after the two officers had refused to surrender their revolvers for a period of 30 days for testing, that the court enter such an order. Defendant also says that the state's attorney agreed in the trial court to be bound by the order suppressing the testimony of the two officers and thus should not be permitted to appeal from that order.

Upon examination of the record we find it to be true that this order was entered upon the suggestion of the state's attorney, who also agreed that the state would be bound by it. Under ORS 135.835 there were other options available to the trial judge, from which the state would have had no right of appeal, when he was confronted with the refusal of the officers to produce their revolvers for inspection and testing for a period of 30 days, as previously ordered by the court. The trial judge might well have chosen some other option, except for the suggestion by the state's attorney that under ORS 135.835 the court could refuse to permit

[ 173 ]

the police officers to testify and that "the state would be bound" by such an order.[2]

Although the order suppressing the testimony of the two officers was an "appealable order" by the state within the meaning of ORS 138.060(3), to hold that the state was entitled to appeal from that order under the circumstances of this case would permit the state to appeal from all orders requiring it to produce evidence by first refusing to produce that evidence, then suggesting to the trial court that it enter a subsequent order suppressing other evidence to which no pretrial objection had been made by the defendant, agreeing to be bound by that order, and then appealing from that order. Under these circumstances we hold that the state was not entitled to appeal from the order suppressing the testimony of the two police officers.[3]

---

[2] At the conclusion of the next to the last hearing before the entry of the order in dispute, at which the refusal of the police officers to surrender their service revolvers was discussed, the following appears:

"MRS OUZTS: [Deputy district attorney] May I be heard? ORS 135.865 effect of failure to comply with discovery requirements.

" *'Upon being apprised of any breach of the duty imposed by the provisions of ORS 135.805 to 135.873, the court may order* the violating party to permit inspection of the material or grant a continuance, or *refuse to permit the witness to testify,* or refuse to receive in evidence the material not disclosed, or enter such other order as it considers appropriate.'

"Those are matters to be taken up at trial if the court sees fit. The State has requested the trial date, has requested the defendant to first enter the plea to establish that a trial is necessary and *the State would be bound by any order of the Court refusing to permit witnesses to testify* or evidence to be admitted, physical evidence to be admitted." (Emphasis added)

[3] Cf. *Sheets v. B & B Personnel Systems,* 257 Or 135, 147, 475 P2d 968, 476 P2d 920 (1970); *Eldon et al v. Chandler et al,* 202 Or 407, 409, 275 P2d 748 (1964); *Howland v. Iron Fireman Mfg. Co.,* 188 Or 230, 290, 213 P2d 177, 215 P2d 380 (1950); *Burgess v. Charles A. Wing Agency,* 139 Or 614, 624, 11 P2d 811 (1932); *Warren Construction Co. v. Grant,* 137 Or 410, 416, 299 P 686, 2 P2d 1118 (1931); *Garrett v. Johnson,* 107 Or 670, 671, 212 P 110 (1923); and *Parrish v. Stephens,* 1 Or 73 (1853).

We also note that the authority conferred by ORS 135.865 to "refuse to permit the witness to testify" is with reference to "any breach of the duty [of disclosure] imposed [upon the state] by the provisions of ORS 135.805 to 135.873" and that the duty imposed upon it by ORS 135.815 to disclose "tangible objects" is limited to those "tangible objects" which the state "intends to offer in evidence at the trial" or which were "obtained from or

In the ordinary case, upon holding that an appellant is not entitled to appeal, it then becomes unnecessary to consider the merits of the case and the appeal is then dismissed. Because, however, this case comes to us on petition for review from the Court of Appeals and because one of the two reasons why we accepted the petition for review was our concern whether the opinion by the Court of Appeals correctly states the law on the question whether the trial court properly ordered the production of the two guns, we shall next consider that question.

2. *The two revolvers in this case were not shown by defendant to be properly subject to discovery.*

Defendant's motion for discovery in this case demanded the production of 22 items, including the service revolvers of two police officers, and stated that it was "based on Amendment VI to the Constitution of the United States and *Brady v. Maryland,* 373 US 82, 10 L ed 2d 215, 83 S Ct 1194."

As previously stated, the majority opinion by the Court of Appeals held that the state could not excuse its failure to produce the revolvers upon the ground that the officers refused to make their service revolvers available for test firing except upon their own terms. We agree with that holding.

We also agree with the holding by the Court of Appeals that when the attorneys for the parties were

belong to the defendant." It is also to be noted that defendant did not contend that he was entitled to discovery under ORS 135.815. The provisions of that statute were not applicable to defendant's motion for production of the two guns, for reasons stated below. The contention of this defendant was that he had a constitutional right to production of the guns.

Accordingly, it may be contended that the power of the trial court to suppress the testimony of the officers could be exercised only as a penalty for breach by the state of its duty of disclosure under the statute and that the trial court had no power to refuse to permit the officers to testify as a penalty for the refusal of the state to produce the guns for inspection and testing in violation of defendant's alleged constitutional rights. No such contention is made by the state in this case, however, and that question is not now presented for decision.

unable to agree upon the time, place and circumstances for the inspection of the items to be produced, the trial court should have intervened and should have entered an order fixing reasonable and necessary terms relating to the time, place and circumstances for such an inspection. The trial court had both the power and the duty to do so, not only to protect the rights of both parties, but also in order that the case might be brought to trial without unreasonable delay.[4] See *State ex rel Dooley v. Connall,* 257 Or 94, 102, 475 P2d 582 (1970), and ORS 135.845.

As also previously stated, the majority opinion held that "defendant had a right under appropriate circumstances to have his own qualified expert make such examination of the * * * guns * * * as was reasonably necessary to ascertain facts material to the charge," citing *Brady v. Maryland, supra,* among other cases. The opinion also appears to hold that disclosure would be required by reason of ORS 135.805, 135.815 and 135.845. We disagree with those holdings.

As stated by Chief Judge Schwab in his dissenting opinion, the rules governing the rights of discovery in criminal cases under *Brady* and these rights arising under ORS 135.805 to 135.873 are "not necessarily synonymous." Defendant's motion in this case is based specifically upon *Brady,* without reference to those

[4]In this case the offense was allegedly committed on March 18, 1973. Defendant was indicted on September 28, 1973. Defendant's motion for discovery was filed on November 23, 1973. A hearing was held on that motion on January 7, 1974, and the original order for discovery was entered on January 18, 1974. At a subsequent hearing on March 7, 1974, the trial court left it to the attorneys to work out arrangements for the inspection. The attorneys were apparently unable to do so. On July 5, 1974, the court entered an order requiring all items to be delivered to defendant's attorney, to be returned in 30 days

At a further hearing for entry of plea on October 21, 1974, it appeared that none of the items had been delivered because of further disagreements between the two attorneys, apparently because of the refusal of the officers to deliver their guns to defendant's attorney for 30 days.

On December 5, 1974, defendant filed a motion to dismiss for lack of a speedy trial. After further hearings on December 5 and 6, the court denied that motion and on December 11, 1974, entered the order suppressing the testimony of the two officers.

statutes. In any event, they have no proper application in determining defendant's right to inspection of the two guns. ORS 135.815(4) requires the production for examination by the defendant in a criminal case of "tangible objects," such as guns, only when "the district attorney intends to offer [the] evidence at the trial"; or when such objects "were obtained from or belong to the defendant." The state's attorney informed the trial court that the state did not intend to offer these two guns in evidence and they were not obtained from and did not belong to the defendant.

In considering whether the majority was correct or incorrect in its holding that defendant has the right under *Brady* to inspect and test the service revolvers of two of the police officers, we first note again that defendant is charged with "firing a high powered rifle" at a police officer. It appears that at the time of the shooting the police officer was behind a police car; that there were also other officers in the vicinity; that, according to the state's attorney, "the evidence [will] indicate that the police officers discharged their firearms as well as the defendant"; that a bullet hole was found in the windshield of the car and that fragments of a bullet were found inside the car.

At the hearing at which defendant's motion was granted, defendant's attorney made the following statement with reference to these items:

"* * * Number 10 and 11, and 12, and 13 all involve the service revolvers, two service revolvers of the two police officers who fired on this particular occasion together with a request for six rounds of identical amunition [sic] used on the night of this particular incident. The reason for this is to cross reference the type of amunition [sic] which was used by the police officers against the type of fragments or bullets found in the police vehicle which the District Attorney has already agreed to allow us to investigate in the examination of whether the fragments are the same or different than the fragments which came from the rifle, the 30 30, and they [sic] only way to do that is by independent examinations of such bullets."

[ 177 ]

Upon being informed, in response to his inquiry, that the state's evidence would show that "the police officers discharged their firearms, as well as the defendant," the trial judge then held that it was "reasonable" that defendant "have the opportunity to fire through each of the officers' weapons six rounds of ammunition of the type used on that date."

In deciding whether or not that ruling was correct, we first note that the rule of *Brady,* as stated by the Supreme Court of the United States, is as follows:

"* * * [S]uppression by the prosecution of evidence *favorable to an accused upon request* violates due process where the evidence is *material either to guilt or to punishment,* irrespective of the good faith or bad faith of the prosecution." 373 US at 87. (Emphasis added)

In *State ex rel Dooley v. Connall, supra* at 103, we stated the following rule for application in determining whether to allow or deny a motion by the defendant in a criminal case for the discovery of evidence to which he claims to be entitled under *Brady:*

"The essence of the rule of *Brady v. Maryland* is that it is a violation of due process for the prosecution, after request of the defendant, to withhold evidence *favorable to the accused. The request of the defendant, in the form of a motion, should state with as much particularity as possible the evidence that the defendant contends is favorable to him.* If a difference of opinion exists between the defendant and the prosecution as to whether the evidence is favorable to the defendant, the difference should be resolved by the trial court by an *in camera* inspection of the evidence." (Emphasis added)

When it cannot be determined by the trial judge whether or not the evidence demanded is "favorable to the accused" and "material" to his guilt or punishment by a visual *in camera* inspection, as in this case, the problem is more difficult. In a case in which that question can only be determined by scientific tests the defendant cannot reasonably be required to support his motion for discovery by a factual showing, by affidavit or otherwise, sufficient to demonstrate that

the evidence requested by him is "favorable" and "material."

On the other hand, *Brady* imposes an affirmative duty upon the state to disclose to the defendant, and without any request by the defendant, at least any evidence that is clearly "favorable" to the defendant and "material" to his guilt or innocence, such as a statement by a third person admitting the crime for which the defendant is charged. Indeed, in such a case the question may be raised by defendant by post-conviction proceedings. See discussion in *Hanson v. Cupp,* 5 Or App 312, 484 P2d 847 (1971), and cases cited therein. See also Annot., 34 ALR3d 16, 91-93 (1970).

This case, however, involved evidence which is not clearly "favorable" to the defendant and "material" to his guilt or innocence. In the event that scientific tests are made by the state which disclose that the bullet fragments were fired by one of the service revolvers, the state would have an affirmative duty to disclose the results to the defendant, both under *Brady* and also under ORS 135.815. Until or unless such tests are made, however, it would appear that the state would not know whether or not the two service revolvers constitute evidence that is "favorable" to the defendant and "material" to his guilt or innocence.

In such a case, we believe that under the rule of *Brady* and that of *State ex rel Dooley v. Connall, supra,* it is proper to require that the defendant make at least *some* showing, to the extent reasonable under the circumstances of the particular case, to support at least a belief and contention in good faith that the evidence demanded is "favorable" to the defendant and "material" to his guilt or innocence.

The defendant, in his brief on this appeal, cites *Brady* and other cases holding that a defendant in a criminal case had a constitutional right to demand the disclosure by the state of any "exculpatory" evidence

in its possession and proceeds on the assumption that the two revolvers are "exculpatory" evidence. Defendant contends that it is a matter of "absolute necessity" that defendant be permitted to inspect and test fire the two revolvers.

On the other hand, the dissenting opinion in the Court of Appeals concludes that defendant failed to show any "need" or "necessity" for the production of the two revolvers for inspection and testing for the reason that by testing the bullet or bullet fragments together with bullets fired by the *rifle* defendant could determine whether or not that bullet was fired by the rifle and that if these tests showed that it was not fired by the rifle it was wholly immaterial whether or not it was fired by the police revolvers.

For the purpose of applying the rule previously stated to the facts of this case, however, we look primarily to the affidavit in support of defendant's motion for disclosure. That affidavit states no facts from which it appears that an examination and testing of the two revolvers will disclose evidence favorable to him. It also fails to state a belief or even a bare contention to that effect. The affidavit, while saying that the "statements" demanded by the motion (i.e., "statements of any witnesses") "may contain exculpatory information," makes no such contention as to the revolvers. With reference to them the affidavit says only that "the physical objects requested are necessary to determine the actual facts of this case."

The affidavit also states that all information requested is "important to properly defend this case and to properly advise the Defendant concerning his entry of a plea" and "his rights in this matter"; that such information is "relevant to [his] innocence or guilt"; and that without such information defendant "would effectively be denied the right to counsel as set out in Amendment VI to the Constitution of the United States." Defendant cites no authority in sup-

port of his claim to such a broad right of discovery in a criminal case other than *Brady.*

Upon also considering the statements made by defendant's counsel at the time of the hearing upon defendant's motion for disclosure, as quoted above, it appears that no statement or contention was made at that time to the effect that the two service revolvers constituted evidence that was "favorable" to the defendant or was believed by the defendant to be "favorable" to him, but only that defendant desired to conduct "independent examinations" of the revolvers and bullets.

We agree with the statement by the dissenting opinion of the Court of Appeals in this case that "*Brady* is not authority for what defendant here seeks to do, that is, obtain evidence of unknown import to test and determine whether it helps or hurts his case."

For all of these reasons, we hold that defendant's motion for discovery was insufficient under *Brady,* as well as under ORS 135.805 to 135.873, insofar as it demanded production of the two revolvers for inspection and testing and that the majority opinion of the Court of Appeals was in error in holding to the contrary.

In order to prevent misunderstanding, however, it should be pointed out that it does not necessarily follow, as the dissenting opinion of the Court of Appeals would appear to contend, that the rights of a defendant to discovery under *Brady* are limited to the production by the state of evidence for which there is a "necessity" or a "need" shown by him and that discovery of evidence can or should be denied if he "has obtained everything that he needs" in order to prove a fact.[5]

---

[5]The dissenting opinion by Schwab, Chief Judge, says that:

"* * * As I understand the record, the district attorney belatedly — almost eleven months after first ordered to so do by the trial court — made the recovered bullet available to the defendant for independent testing. Therefore, *defendant has obtained everything that he needs.* Tests on the

■ ■ Defendant's right to discovery under *Brady* does not depend upon the question of defendant's "necessity" or "need" for evidence withheld by the state, but upon the question whether such evidence is "favorable to the accused" and "material" to his guilt or innocence. Similarly, defendant's right to discovery under the terms of ORS 135.805 to 135.873 does not depend upon a showing of either "need" or upon whether such evidence is "favorable" and "material," but solely upon whether the requirements of the statutes are satisfied. It follows that the state cannot justify the withholding of evidence by contending that defendant has no "need" for such evidence or because it has furnished defendant with other evidence.

It has been held that trial courts have inherent power, within the exercise of a sound judicial discretion, to require the state to produce evidence for inspection by defendants in criminal cases, wholly apart from the constitutional requirements recognized in *Brady* and wholly apart from the presence or absence of any statutory requirements.[6] Under such a rule, the fact that a defendant may or may not have "need" for the discovery of physical objects such as guns might well be a proper factor to be considered by the trial court in the exercise of such a discretion.

This court, however, has never adopted such a rule and that question is not before us for decision in this

recovered bullet should indicate whether it came from a high-powered rifle or from a revolver. Defendant need not prove that the bullet did come from any individual officer's revolver; only that it *did not* come from his rifle. In the absence of any showing that the recovered bullet is inadequate for defendant's legitimate purposes, *there is no need shown for defendant to obtain the officers' revolvers for testing.*

"\* \* \* \* \*

"Finding that the revolvers are not subject to the constitutional or statutory (ORS 135.815(4)) rules, and *most importantly,* that defendant does not need them to prepare his defense, I would reverse that order appealed from." (Emphasis added)

[6] See 6 Wigmore on Evidence 395, § 1850 (3d ed 1940), and Annot., 7 ALR3d 8, 36 (1966).

case.[7] But even under such a rule of inherent judicial power and discretion, it is held that a defendant has no right to embark upon a "tour of investigation" by an examination of everything in the state's possession or control in the hope that "something may turn up."[8]

This is an unfortunate case. It is an example of how procedures adopted for the protection of persons accused of crime in the continuing "search for perfect justice" may result in a frustration of the processes of criminal justice. For all of these reasons, however, the decision by the Court of Appeals is reversed and this case is remanded to it with instructions that it then be remanded to the trial court for further proceedings consistent with this opinion.

Reversed and remanded.

**HOLMAN, J.,** specially concurring.

It is my opinion that that part of the statute permitting appeals by the state, ORS 138.060(3), was not intended by the legislature to be used for the purpose of deciding questions relative to discovery. As the second part of the majority opinion discloses, the only issue involved was whether the trial court was in error in deciding that the officers' revolvers were subject to discovery. Suppression of the testimony of the police officers was used only as a sanction to enforce discovery. There were no questions concerning the propriety of the use of the officers' testimony.

Such use of the appellate statute lends itself to the promotion of contrived interlocutory appeals by the trial court to test questions which relate to matters other than the suppression of evidence. Almost any pretrial question involved in a criminal case can be

---

[7]Cf. *State v. Leland,* 190 Or 598, 614-15, 227 P2d 785 (1951), *aff'd,* 343 US 790 (1952), and *State v. Yee Guck,* 99 Or 231, 236, 195 P 363 (1921).

[8]See *Doakes v. District Court,* 447 P2d 461 (Okla Cr 1968); *State v. District Court,* 135 Mont 545, 342 P2d 1071 (1959); and *State v. Superior Court,* 78 Ariz 74, 275 P2d 887 (1954); Cf. *State ex rel Dooley v. Connall,* 257 Or 94, 104, 475 P2d 582 (1970).

tested by the trial judge through an interlocutory appeal by the state as long as a sanction can be devised which includes the suppression of evidence. I do not believe this was the legislative purpose which caused the enactment of the statute.

O'CONNELL, C. J., joins in this opinion.