Argued March 23, affirmed April 20, reconsideration denied May 25, petition for review denied September 7, 1977

STATE OF OREGON, *Respondent,*

*v.*

HENSLEY DAVID MEYERS, JR., *Appellant.*

(No. 17-685 (Tillamook County), No. CC75-434 (Clatsop County), CA 6440)

562 P2d 1227

Paul J. DeMuniz, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

James C. Rhodes, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Lee and Richardson, Judges.

SCHWAB, C. J.

## SCHWAB, C. J.

■■ Defendant appeals from his conviction for murder. ORS 163.115. The significant issues are whether the prosecution withheld exculpatory evidence, and whether the admission of evidence—now conceded by the state to have been illegally seized—constitutes reversible error.[1]

### I

■ The day of the homicide three witnesses gave investigating officers written statements concerning a person or persons they had seen in the vicinity of the victim's residence. These statements were subsequently lost and never made available to defendant.

The question is whether the defendant made the required showing that the lost statement contained exculpatory evidence. *See Brady v. Maryland,* 373 US 83, 83 S Ct 1194, 10 L Ed 2d 215 (1963); *State v.*

---

[1] Defendant also assigns as error denial of a motion for a mistrial made when a witness started to say something which might have been objectionable as hearsay. Defense counsel objected before the witness could finish. The objection was sustained. The court cautioned the jury to ignore the partial response and struck it from the record. There was no error in the denial of the motion for a mistrial.

Defendant also assigns as error denial of his motion for judgment of acquittal. The trial court succinctly stated sufficient reasons to submit this case to the jury:

"We have the evidence of the break and entry into the building, into the dwelling. We have the fact that the ashtray was used in connection with the fatal assault or at least circumstantially this conclusion can be drawn. There is the evidence that it was a fingerprint on the ashtray which was the fingerprint superimposed upon blood, as I understand the evidence, and that this fingerprint is the defendant's fingerprint.

"There is the further evidence that the decedent had blood type A, I believe, and that blood type A was found upon the one boot known to belong to the defendant. There is the evidence that the defendant knew that [the victim] at least at one time had a substantial sum of money in his wallet.

"There is the evidence that the wallet was out of the pocket and in an open condition from which one—the conclusion could be drawn that the assailant examined at least the wallet.

"There is some evidence that would put the defendant, I believe, on the scene of the crime."

*See State v. Krummacher,* 269 Or 125, 523 P2d 1009 (1974).

*Koennecke,* 274 Or 169, 545 P2d 127 (1976); *State v. Michener,* 25 Or App 523, 550 P2d 449 (1976). We hold that he did not.

The witnesses in question were available at the time of trial, and did testify. Their testimony was generally favorable to the defendant. Defendant nevertheless maintains that the witnesses' prior written statements *might* have been able to refresh their memories as to details where their trial testimony was vague, and that the refreshed memories *might* have been even more favorable. This speculation is insufficient to establish the required showing of "* * * some reasonable possibility, based on concrete evidence rather than a fertile imagination, that [the witnesses' written statements] would be favorable to his cause * * *." *State v. Michener, supra,* 25 Or App at 532.[2]

## II

■ Before trial defendant moved to suppress certain evidence. The motion was denied. Over defendant's renewed objection on the ground of illegal seizure, a jacket, a shirt and a pair of boots were introduced as state's exhibits during trial. The state now concedes that these articles were illegally seized from defendant's residence. The question is whether their introduction was harmless error. We conclude that it was.

There was conflicting evidence about what defendant was wearing the day of the homicide. There was also conflicting evidence about what an unidentified person observed near the crime scene was wearing. The state introduced the clothing defendant was wearing when arrested the day after the homicide; one of the boots defendant was then wearing had blood on it that matched the victim's blood type. The prosecution also introduced the jacket, shirt and the other pair of boots here in question—those illegally seized.

---

[2]Defendant does not contend in this court that the discovery statutes are applicable.

The boots and the jacket illegally seized from defendant's residence added absolutely nothing to the state's case. The crime laboratory technician who tested these articles testified that he found no blood of any type, found no evidence of hair of the victim, and found no evidence of fibers from the rug in the victim's residence. This evidence, if favorable to either side, could only have been favorable to the defendant.

The crime laboratory technician testified that he found evidence of blood on the illegally seized shirt, but the quantity was too small to ascertain whether it was human or animal. Abstractly, this suggests the possibility that introduction of the shirt was prejudicial. However, defendant testified that he went to the victim's residence the day of the homicide, entered, saw the victim on the floor in a pool of blood, went to the victim's side to see if he could render aid, discovered that the victim was dead and then fled in panic. Defendant also admitted he handled a piece of a broken ashtray lying in the victim's blood. Thus, defendant's own testimony was completely consistent with the possibility—if not probability—that some of the victim's blood would be on the clothing he was wearing the day of the homicide.

On this record, we hold that introduction of the illegally seized shirt with a small quantity of human or animal blood on it was harmless error beyond a reasonable doubt.

Affirmed.