Argued March 1, reversed and remanded May 7, 1979

STATE OF OREGON, *Appellant,*

*v.*

BLAND CECIL GIBFORD, *Respondent.*

(No. 807, CA 12271)

594 P2d 858

James D. Huffman, Deputy District Attorney, St. Helens, argued the cause and filed the brief for appellant.

Stephanie A. Smythe, Deputy Public Defender, Salem, argued the cause for respondent. With her on the brief was Gary D. Babcock, Public Defender, Salem.

Before Schwab, Chief Judge, and Buttler and Joseph, Judges.

JOSEPH, J.

**JOSEPH, J.**

Defendant was arrested for driving under the influence of intoxicants. ORS 487.540. A breathalyzer test was administered. The blood alcohol reading was .11 percent. The state appeals an order suppressing the results of the test. The trial court suppressed on the ground that the test ampule was effectively destroyed by the administering police officer in violation of *Brady v. Maryland,* 373 US 83, 83 S Ct 1194, 10 L Ed 2d 215 (1963), and *State v. Michener,* 25 Or App 523, 550 P2d 449, *rev den* (1976). The issue presented is whether defendant made the showing required by *Michener,* and *State v. Koennecke,* 274 Or 169, 545 P2d 127 (1976). *See also State v. Smith,* 38 Or App 173, 589 P2d 1158 (1979).

At the completion of the analysis, the administering officer wrapped the test ampule in aluminum foil to prevent light from reaching the fluid. Either the fluid or vapors from the fluid came in contact with the foil and contaminated the solution. It is undisputed that a retesting of the ampule so contaminated could not have produced a reliable blood alcohol measurement.

The issue which determines the state's duty to produce, under *Michener,* however, is whether the ampule could have been retested had it not been contaminated. There was no evidence presented at the hearing on defendant's motion to suppress which would have supported a finding that retesting would have produced a result that actually measured defendant's blood alcohol level. Defendant put on an expert witness who had in fact retested the contaminated ampule and had obtained a blood alcohol reading of .67 percent, the maximum possible reading with that type of ampule. He was asked, "Why did you get such a high level?" He replied that the most obvious reason was the "gross contamination" resulting from the foil. He did not testify concerning whether the ampule could

have been retested had that contamination not occurred.

The state's expert witness (who had conducted independent research regarding retestability of breathalyzer ampules) testified, in essence, that even if all reasonable precautions were taken by a police officer, who necessarily would administer the test "in the field" (*i.e.,* outside a scientific laboratory), no meaningful retesting of any ampule would have been possible.[1]

---

[1] The expert witness testified in material part as follows:

"Q: In your opinion is there a valid basis for retesting these ampules for use in determining what the original results should have been?

"A: Not in arriving at the accuracy of the original test. They can, however, be retested.

"Q: They can be retested?

"A: Yes.

"Q: And the retest *** will that be of any practical significance?

"A: Not very likely. Only if there are special conditions which are difficult to maintain.

"Q: What kind of conditions?

"A: Well, that you were able to assume that there was no contamination, which is very difficult to assume.

"Q: Have you ever seen that condition maintained?

"A: Not in the field.

"Q: Is it practical for a police officer at a breathalyzer facility to maintain those kinds of conditions?

"A: No.

"Q: Are you speaking of absolutely sterile conditions, perhaps?

"A: I'm only speaking of an ideal condition, also where the time interval between the test and the retesting is relatively short, say within a few days. And even then there could be an increase if conditions were not absolutely protected from being free of contamination *[sic]*.

"* * * * *

"Q: Based on your experience, is it your opinion *** that these cannot be retested under the circumstances now existing in breathalyzer facilities around the state?

"A: They cannot be retested to maintain the same degree of accuracy as the original test *** which would be determining the blood alcohol level with plus or minus .01. *** There would be no way to determine the limits of accuracy if it were retested, because there are too many variables that are uncontrolled.

"Q: (by the court): You did, however, testify, I think, that if it were done under ideal conditions and a short period of time it would be possible to test. Do I read you right?

The trial court concluded, despite the lack of specific evidence of productive retestability, that defendant had met his burden of proof, because the court read *Michener* to have established as a matter of law that breathalyzer ampules can always be retested to produce results that relate to the subject's blood alcohol level. We do not agree.

In *Michener* we stated that

"*** under the particular circumstances of the cases now before us, we conclude that the defendants have made a sufficient showing to support their assertion that, had the evidence—i.e., used test ampules—been available to them, it would have been both material and favorable to their defense. Evidence produced by the defendants below adequately demonstrated both that a meaningful analysis of the test ampules would have been possible and that there was a reasonable possibility that an error could have occurred in the initial administration of the breathalyzer examinations. Therefore, we conclude the showing required under the Oregon Supreme Court's ruling in *State v. Koennecke, supra,* was made in these cases." 25 Or App at 532-33. (Footnote 12 omitted.)

Footnote 11 in that opinion said:

"Contrary to an assertion by the state, we have found substantial evidence in this record to support the finding of the circuit court that '[i]t is scientifically possible to independently retest the accuracy of a breathalyzer reading ***." 25 Or App at 533.

The holding in *Michener* did not purport to establish as a matter of law that used breathalyzer ampules retained under reasonably maintainable field conditions are subject to "meaningful analysis." That case did not obviate the necessity of showing by evidence, in accordance with *State v. Koennecke, supra,* that a

"A: It would be possible to test *** well, as my data indicated, there was a slight increase, maybe a hundredth, maybe two-hundredths, within a few days and so there could be a test made that may be within the same degree of accuracy, but it's so difficult to assure that the solution is free from contamination."

retesting of that quality would have been possible. That *a* test *can* be run is not enough. Because there was no evidence to support a finding of retestability, the court erred in suppressing the breathalyzer results under *Brady* and *Michener*.[2]

Reversed and remanded.

---

[2] We do not reach the issue of the sufficiency of the evidence offered to establish a reasonable possibility of a favorable result if meaningful retesting were possible.