Argued and submitted March 11, 1993, affirmed February 2, petition for review denied April 12, 1994 (318 Or 661)

STATE OF OREGON,
*Respondent,*

*v.*

GORDON DAVID BAKER,
*Appellant.*

(91-01755 CR; CA A75578)

867 P2d 1392

Charles S. Spinner argued the cause for appellant. With him on the brief was Marjorie A. Schmechel.

Thomas H. Denney, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Presiding Judge, and Riggs, Judge, and Durham, Judge pro tempore.

DURHAM, J. pro tempore.

## DURHAM, J. pro tempore

Defendant was convicted of eight counts of injury to native Indian graves, ORS 97.745, theft in the first degree, ORS 164.055, and criminal mischief in the first degree, ORS 164.365. We write only to address his second assignment of error and affirm.

The state's theory was that defendant induced his son, Shawn Baker; his son's friend, Terry Schoonmaker; and defendant's half-brother to travel from Eugene to Chiloquin in order to plunder Indian graves in Wilson Cemetery on the night of December 2, 1990, for the purpose of obtaining artifacts. In July, 1991, Schoonmaker admitted his part in the crime to his probation officer and implicated defendant. The next day, at the instigation of a Lane County Sheriff's detective, Schoonmaker telephoned defendant's home and had a three-party conversation between himself, defendant and defendant's wife. The conversation was taped. During that conversation, Mrs. Baker made statements that arguably showed that both she and defendant were fully aware of the crime, and that all had been involved in its commission. There was no physical evidence linking defendant to the crimes, and the state relied primarily on Schoonmaker's testimony.

■ Defendant argues that the trial court erred when it denied his motion for dismissal or for a new trial as a sanction for the prosecution's discovery violation in failing to disclose an evidence report regarding Indian beads that Schoonmaker had given to the police. The Klamath County District Attorney's office has an "open file" policy concerning discovery.[1] However, because defendant was represented by out-of-town counsel, discovery was conducted by mail. After the trial was completed and immediately before the jury verdict, defense counsel learned, by chance, that Schoonmaker had given the prosecution three Indian beads, which he claimed he had taken from the cemetery. An evidence report had been made.[2]

---

[1] The trial court held that the evidence could have been discovered by defendant. On appeal, neither the state nor defendant argues that that "open file" policy is determinative.

[2] As tangible evidence, which the state did not intend to offer at trial and which was not obtained from defendant, the beads were not subject to discovery under ORS

The existence of the beads contradicted Schoonmaker's prior statement to the police in which he claimed that he had thrown all of the beads that he kept into the river.

Defendant claims that the prosecution's failure to disclose the existence of the beads violated his right to due process. *See Brady v. Maryland*, 373 US 83, 83 S Ct 1194, 10 L Ed 2d 215 (1963), and its progeny. He argues first that the beads were exculpatory evidence. At trial, the state introduced sales records that showed that defendant had sold some Indian items, including beads, at an auction. Defendant argues that, had he known of the existence of the beads, he could have had them analyzed and shown them to the auctioneers who might have been able to testify that he had not consigned any beads similar to Schoonmaker's. Defendant contends that the jury then might have concluded that defendant was not involved in the crimes.

■ ■ Defendant has the burden to make a showing to support a good faith belief that the undisclosed evidence was material and favorable to him. *State v. Koennecke*, 274 Or 169, 179, 545 P2d 127 (1976). We agree with the state that there is nothing inherently exculpatory about the beads, and that defendant has not met his burden. Defendant contends that the beads are the only physical evidence "which link [him] to the crime," but he does not explain how that is so. The record shows that more than one kind of bead was related to the crimes.[3] Even assuming that defendant could elicit testimony from the auctioneers that the beads he sold were not like Schoonmaker's, defendant has not demonstrated how Schoonmaker's possession of different beads would tend to show that defendant had no involvement in the offenses.

Defendant argues, however, that the greater prejudice from the discovery violation was that he could not impeach Schoonmaker's credibility. He notes that he impeached Schoonmaker's ability to recall and testify accurately, and that he showed Schoonmaker's bias. However, he

---

135.815. However, there appears to have been some kind of evidence report, and the state does not contend that there was no discovery violation.

[3] For example, the prosecutor, in summing up the auction records, noted that the entry for January 15 shows "arrowhead display, cobalt beads and other beads." Testimony was also elicited from Shawn Baker about "some shell beads."

contends that the discovery violation deprived him of the only evidence that demonstrated that Schoonmaker was a liar.

The state argues that defendant successfully impeached Schoonmaker without evidence of the existence of the beads. Defendant showed that Schoonmaker admitted that he was under the influence of methamphetamine and beer at the time of the crime and was uncertain about numerous details; that Schoonmaker was shown to be factually mistaken in testimony; that his prior statements to the police had not been entirely consistent; and that he had previously indicated that he could only expect leniency in his own case if his testimony resulted in defendant's conviction. The state contends that showing that Schoonmaker was a liar is merely cumulative of that impeachment.

■ ▪ When a witness lies and that lie is central to the jury's assessment of the testimony, depriving the jury of knowledge of the lie may be grounds for reversal. *See State v. Arnold*, 118 Or App 64, 846 P2d 418, *rev allowed* 317 Or 271 (1993). Defendant contends that the lie is significant here, because it was directly related to the case. It is true that Schoonmaker took the beads during the acts for which defendant was charged. However, that, alone, does not mean that the lie was crucial to the jury's assessment of the testimony.

In *State v. Arnold, supra,* a witness who had interviewed a child about sexual abuse had lied about her educational background and qualifications. The witness' testimony impeached the child who, on direct examination, had testified that she did not know if anyone had touched her. The accuracy of the interview with the child was crucial. We held that the interviewer's background was essential to the jury's assessment of the interview, and that we could not say that the jury's verdict would have been the same had it known that the witness lied about her qualifications.

■ Unlike in *Arnold*, where the witness' lie related directly to her ability to interview the alleged victim, here there was no direct relationship between Schoonmaker's lie, which was that he threw the beads in the river, and defendant's involvement in the grave robbing. Rather, as defendant acknowledges, the importance of Schoonmaker's lie was that it showed he was a liar. The jury was apprised of that.

The court instructed the jury:

> "The state and the defense have agreed or stipulated that if [the auction owner] were called as a witness, she would testify as follows: That she is one of the owners of Community Auction in Eugene, and that *Terry Schoonmaker worked there and was a liar* and was fired for stealing from the auction." (Emphasis supplied.)

In the light of that instruction and defendant's other impeachment testimony, we cannot say that the additional evidence that Schoonmaker lied about throwing away the beads would have made such a difference in the jury's assessment of his testimony, that the prosecution's failure to disclose the existence of the beads requires reversal of defendant's convictions as a sanction for the discovery violation. We cannot say that the trial court abused its discretion in denying defendant's post-trial motion for dismissal or for a new trial.

Defendant's other assignments of error do not require discussion.

Affirmed.